# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                     CASE NO: 8:24-cr-429-CEH-CPT

SLAWOMIR WINIEWSKI,
WIESLAW ROBERT RUTA, and
PIOTR MAREK ADAMCZYK

_____/

## ORDER

This matter comes before the Court upon Defendants' Motion to Suppress Evidence (Doc. 40). The Government filed a response in opposition to the motion (Doc. 51). A hearing was held on May 27, 2025. The Court, having considered the motion, memoranda, and argument of counsel, will deny Defendants' Motion to Suppress Evidence.

## I.   BACKGROUND

Slawomir Winiewski, Wieslaw Robert Ruta, and Piotr Marek Adamczyk,[1] are charged in a two-count indictment with possession, and conspiracy to possess, with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501, *et seq.* These charges arose out of an interdiction by

---

[1] Winiewski's counsel filed the Motion (Doc. 40), which was then adopted by Ruta and Adamczyk. Docs. 47, 48.

the United States Coast Guard (USCG) of a Polish flagged vessel sailing in the international waters of the Caribbean Sea.

On September 19, 2024, the USCG encountered a Polish flagged vessel, the *Nicollet*, sailing in the international waters of the Caribbean Sea.[2] The Coast Guard Cutter, *Resolute*, plotted a course to intercept the vessel. On September 20, 2024, at approximately 8:09 a.m., the *Resolute* boarding team conducted right of approach questioning to determine and verify the nationality of the *Nicollet*.

Winiewski identified himself as the master of the *Nicollet* and made a verbal claim of Polish nationality for the vessel. Winiewski stated that the *Nicollet* left Panama on September 14, 2024 and was heading to Martinque, a French island in the Caribbean, to fix a steering problem. During this questioning, the USCG noticed rub marks on the vessel, extra fuel on deck, and a path of travel that did not coincide with Winiewski's statements. When the USCG first spotted the *Nicollet*, the vessel was almost halfway between Colombia and the Dominican Republic, which is due west of Martinque. The *Nicollet* was sailing north at the time. Defendants assert that the reason the *Nicollet* was not sailing east to Martinque was because the wind at the time was blowing east to west, thus the *Nicollet* had to sail north for a period of time and then change track and sail southeast.

The USCG then contacted the government of Poland to request confirmation of the *Nicollet's* registry and nationality and waited for a response from Polish

---

[2] For purposes of the motion to suppress, the essential facts are undisputed.

authorities. At approximately 6:00 p.m. the same day, the Polish Police Central Bureau of Investigations informed the USCG that "there is no boat registered in Poland with [the *Nicollet's*] data[.]" Doc. 51-1. The USCG then compiled the *Nicollet's* documents such as the vessel's registration and passports of Defendants. The registration showed that the *Nicollet* was registered with the Polish Yachting Association in 2014. The Polish Yachting Association handles the registration of vessels under twenty-four meters in length, and registrations prior to 2020 are not required to be digitized. The USCG did not contact the Polish Yachting Association when verifying the *Nicollet's* registration information. The USCG determined that the *Nicollet* was a vessel without nationality, then conducted a full law enforcement boarding at approximately 7:40 p.m. in which they located and seized around 743 kilograms of cocaine. The total interdiction lasted approximately eighteen hours, around eight hours of which the USCG was waiting on the Department of State and by extension Polish authorities to respond to the *Nicollet's* claim of nationality.

Defendants' Motion to Suppress Evidence is based on five arguments: (1) the USCG's search shocks the judicial conscience; (2) the USCG's detention of Defendants violated international norms; (3) the *Nicollet* was not a stateless vessel and thus not subject to the MDLEA's jurisdiction;  (4) the USCG is only authorized to seize a foreign vessel in international waters if reasonable suspicion exists that the members of the vessel engaged in a crime with nexus to the United States; and (5) Defendants are entitled to Fourth Amendment protection.

## II.    DISCUSSION

### A. Shocks the Judicial Conscience

Defendants argue that the Eleventh Circuit finds evidence from foreign searches inadmissible if the officials' conduct during the search shocks the judicial conscience. Defendants specifically argue that the eighteen-hour detention of the *Nicollet* shocks the judicial conscience.

Evidence obtained by methods that are "so brutal and so offensive to human dignity" shocks the conscience and violates the Due Process Clause. *Rochin v. California,* 342 U.S. 165, 174 (1952). Conduct most likely to shock the judicial conscience is the "conduct intended to injure in some way unjustifiable by any government interest." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003). In *Rochin*, a doctor, at the direction of a police officer, forced an emetic solution through a tube into defendant's stomach against his will. *Rochin*, 342 U.S. at 166. This stomach pumping agent produced vomit with two capsules containing morphine. *Id.* The Supreme Court held that the official's conduct shocked the judicial conscience. *Id.* In *United States v. Frank*, the defendant moved to suppress statements he made while detained at a police station for around fifteen to seventeen hours by Cambodian authorities. *United States v. Frank*, 2007 WL 9706275, at *8 (S.D. Fla. Mar. 16, 2007), *aff'd,* 599 F.3d 1221 (11th Cir. 2010). The court held that the officials' conduct did "not come close to meeting the shock-the-conscience standard." *Id.* The court reasoned that the defendant was not "threatened, beaten, tortured, or otherwise mistreated[.]" *Id.* Although the defendant

was detained for around fifteen to seventeen hours, he was never handcuffed, or taken to jail, and he was provided food, water, and a bed. *Id.* In *Frank*, the court considered the suppression of evidence that was uncovered by foreign officials in a foreign country. *Id.*

Defendants do not allege that the United States Coast Guard (USCG) intended to injure Defendants. Additionally, the USCG had a justifiable government interest in detaining the *Nicollet* for the purpose of ascertaining the vessel's nationality. Eight hours of the detention consisted of the USCG waiting for a response from Polish authorities, which Defendants do not dispute. The fifteen-to-seventeen-hour detention in *Frank*, is similar in time to the eighteen-hour detention here. Additionally, like the defendants in *Frank*, Defendants were not threatened, beaten, tortured, taken to jail, or handcuffed during their detention, rather they were allowed to remain aboard their vessel. The USCG's conduct does not meet the shock-the-conscience standard.

### B.  International Norms

Defendants also allege that the USCG's interdiction of Defendants violated international norms. During oral argument, Defendants argued that the *Nicollet* followed the requirements under the United Nations Convention on the High Seas, which should have dispelled any suspicion on the part of the USCG. The Maritime Drug Law Enforcement Act (MDLEA) states that "[a] person charged with violating [this act] . . . does not have standing to raise a claim of failure to comply with international law as a basis for a defense." 46 U.S.C. § 70505; *see also United States v.*

*Hernandez*, 864 F.3d 1292, 1302 (11th Cir. 2017) ("[A]ny battle over the United States' compliance with international law in obtaining MDLEA jurisdiction should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system."). The statutory language of the MDLEA precludes criminal defendants from alleging violations of international law, therefore Defendants do not have standing to raise violations of international law.

### C. MDLEA Subject-Matter Jurisdiction

Defendants claim that the USCG failed to properly verify the *Nicollet's* registration, and that the vessel was not stateless because it was flying a Polish flag and had valid registration documents. The MDLEA provides that the United States has jurisdiction over "a vessel without nationality[.]" 46 U.S.C. § 70502(c)(1)(A). Whether a vessel is "without nationality" is a statutory element required for subject matter jurisdiction. *See United States v. Cabezas-Montano*, 949 F.3d 567, 588 (11th Cir. 2020). The government bears the burden of establishing the statutory requirements of MDLEA subject-matter jurisdiction. *Id.*

The Government alleges that the *Nicollet* is a vessel without nationality under the MDLEA because it meets the statutory requirements. A vessel is stateless under the MDLEA if "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality[.]" 46 U.S.C. § 70502(d)(1)(C). Whether the *Nicolett* was actually registered in Poland does not override this analysis. *See Hernandez*, 864 F.3d at 1299 ("MDLEA statelessness does

not turn on actual statelessness, but rather on the response of the foreign government[.]"). In *Hernandez*, the court found a vessel was "without nationality" under the MDLEA where the Guatemalan government responded that it "could neither confirm nor deny" that the vessel was registered in Guatemala. *Id.* at 1300.

Here, Winiewski, master of the vessel, claimed that the vessel was of Polish nationality. It is undisputed that the Polish government informed the USCG that "there is no boat registered in Poland with [the *Nicollet's*] data[.]" Doc. 51-1. Therefore, the *Nicollet* is considered a "vessel without nationality" within the meaning of the plain text of the MDLEA. Although Defendants allege that the USCG was shown registration documents for the *Nicollet* showing that it was registered with the Polish Yachting Association in 2014, the MDLEA statelessness requirement turns on the response of the foreign government. The Polish government did not affirmatively and unequivocally assert that the *Nicollet* was of Polish nationality. Therefore, the *Nicollet* is subject to the jurisdiction of the United States.

### D. Nexus

Next, Defendants argue that the USCG is only authorized to seize a foreign vessel in international waters if reasonable suspicion exists that the members of the vessel are engaged in a crime with nexus to the United States. Defendants cite to Fifth Circuit precedent and a Southern District of Florida case in support. *See United States v. Williams*, 617 F.2d 1063, 1076 (5th Cir. 1980) (holding that the USCG needs to have at least a reasonable suspicion that a vessel is subject to the operation of the United

7

States' laws before seizing the vessel); *United States v. Postal*, 589 F.2d 862, 884 (5th Cir. 1979) (holding that foreign vessels in international waters become subject to the jurisdiction of the United States if they are engaged in a conspiracy to violate federal narcotics statutes); *United States v. James-Robinson*, 515 F. Supp. 1340, 1347 (S.D. Fla 1981) (holding that the court was without subject matter jurisdiction to consider charges brought against foreign nationals on a stateless vessel when the ship was found in international waters and "there [was] no accusation that the defendants intended to distribute [a controlled substance] in the United States").

These cases were decided prior to the enactment of the MDLEA and its 1996 amendment which conferred on the United States extraterritorial jurisdiction without a nexus requirement. 46 U.S.C. § 70504(a) ("Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense."). In *United States v. Campbell*, 743 F.3d 802, 809-812 (11th Cir. 2014), the Eleventh Circuit considered whether the MDLEA's extraterritorial jurisdiction violated the constitution. The Eleventh Circuit held that "Congress has the power . . . to proscribe drug trafficking on the high seas" and "conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Id.* at 810. Therefore, the USCG was authorized to seize the *Nicollet*.

### E. Fourth Amendment

Last, Defendants argue that any evidence uncovered from the boarding and search of the *Nicolett* is unconstitutional under the Fourth Amendment. The

8

Government argues that the Fourth Amendment does not apply to government search and seizures of non-resident aliens arrested in international waters. The Government's position is consistent with Eleventh Circuit precedent. *See*, *e.g.*, *United States v. Hurtado*, 89 F.4th 881, 895 (11th Cir. 2023) ("[T]he Fourth Amendment does not apply to people who are not United States citizens or resident aliens and who are searched or seized by United States law enforcement outside the United States."); *Cabezas-Montano*, 949 F.3d at 593 ("[T]he Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien arrested in international waters or a foreign country." (emphasis omitted)). During oral argument, Defendants conceded that the Fourth Amendment does not apply here under the current caselaw.

In their motion, Defendants assert that the "Fourth Amendment protects against unreasonable searches and seizures, and this protection extends to vessels in international waters[,]" but Defendants do not provide a citation for this proposition. *See* Doc. 40. Indeed, a case that Defendants cite for a different proposition supports the Government's view. *See Emmanuel*, 565 F.3d at 1332 ("[T]he Fourth Amendment does not apply to nonresident aliens whose property is searched in a foreign country[.]"). In the section of their motion arguing that the USCG's actions violated the Fourth Amendment, Defendants do not cite a single case decided after *United States v. Verdugo-Urquidez*, 494 U.S. 259, 274-75 (1990), which held that the Fourth Amendment does not apply to the search and seizure by the United States of property owned by nonresident aliens in foreign countries. Because Defendants have failed to

9

establish that the binding precedent on which the Government relies is invalid, Fourth

Amendment protections do not apply to Defendants.

Accordingly, it is hereby **ORDERED:**

1. Defendants' Motion to Suppress Evidence (Doc. 40) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on July 14, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record