**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

**v.** **Case No.: 8:24-cr-429-CEH-CPT-1**

**SLAWOMIR WINIEWSKI**
______________________________________ /

**DEFENDANT'S SENTENCING MEMORANDUM**

***The Sea Came First***

Long before the *Nicollet*, the sea had already shaped much of Slawomir Winiewski's life.



There is a photograph of him from a very different time. He is young, formally dressed, and looking directly into the camera. The photograph appears in a diploma issued by the University of Szczecin on May 21, 2007. The diploma records that Mr. Winiewski completed his studies in geography, specialized in *geografia morza*, the geography of the sea, and earned the degree of *magister* (master). Ex. B.

The importance of the diploma is not simply the academic credential. It fixes something in time. Nearly two decades before this prosecution, the sea already represented education, work, curiosity, and possibility in Mr.

Winiewski's life. His knowledge of boats and the water was not acquired for this crime. It was part of an identity constructed over many years.

That identity did not emerge from an uncomplicated beginning. Mr. Winiewski's youth in Poland included family dysfunction, rebellion, interrupted education, drug use, heroin addiction, treatment, and encounters with the Polish criminal justice system. His life was not without serious faults, failures, and difficulties.

But those failures were not the whole of it. He returned to education. He developed practical trades. He worked as a photographer and in construction and restoration. He found legitimate work around boats. And the young man whose life had once become disordered by addiction eventually completed years of university study and earned the degree reflected in Exhibit B.

The diploma therefore documents something more important than academic achievement. It demonstrates that Mr. Winiewski has failed before, but has also rebuilt before.

***A Father and a Life Outside this Case***

The sea was also part of the relationship Mr. Winiewski built with his daughter. Her letter does not describe an abstract interest in sailing. Ex. A. She remembers actually being on the Baltic Sea with her father. She remembers him singing sea shanties to her rather than conventional lullabies.

And she describes a father who gave her a sense that the world was larger than the place immediately around her, an inquisitiveness that she connects to the life and career in aviation she has pursued for herself.

Those are small memories. They describe who Mr. Winiewski was when there was no federal criminal case and no reason for anyone to manufacture mitigation. Long before a sailboat became evidence, the sea meant education, work, family, exploration, and time between a father and his daughter.

None of this excuses what happened aboard the *Nicollet* but Mr. Winiewski's history demonstrates both his capacity for serious error and his capacity to return from it.

***Mr. Winiewski Accepts Responsibility for the Cocaine Offense.***

The offense itself is serious. When the Coast Guard boarded the *Nicollet* on September 20, 2024, officers discovered 743 kilogram packages concealed behind the interior walls of the vessel. Subsequent laboratory analysis established a net cocaine weight of approximately 735 kilograms. PSR ¶ 12.

Mr. Winiewski does not contest the gravity of that conduct. He admitted that he knowingly participated in transporting the cocaine. He has not attempted to characterize himself as an unwitting captain, suggest that someone secretly placed the cocaine aboard his vessel, or claim that Ruta and Adamczyk recruited or manipulated him into participating.

His dispute has always been narrower: what the other two men knew. That distinction is apparent from the plea process itself.

The Government's written factual basis filed before the change-of-plea hearing alleged that Mr. Winiewski "willingly agreed to transport cocaine aboard the S/V with his codefendants, Wieslaw Robert Ruta and Piotr Marek Adamczyk, and others." Doc. 118 at 5. That was the Government's allegation. It was not simply adopted by Mr. Winiewski.

At the April 23, 2026 change-of-plea proceeding, the factual basis was amended so that Mr. Winiewski could admit his own participation and his agreement with other persons, not Ruta and Adamczyk. Doc. 174 at 30:6-15.

***The Disputed Account Remained Materially Consistent***

The chronology provides additional evidence of that consistency. On December 12, 2025, before Mr. Winiewski's guilty plea and before the co-defendants' trial, counsel arranged for a polygraph examination focused specifically upon the factual issue that later became central to sentencing.

Mr. Winiewski was asked whether he had informed the crew members that he was transporting illegal drugs and whether the crew members had been informed that he was transporting illegal drugs. He answered no. The examiner reported the result as "No Deception Indicated." Ex. C.

The defense does not contend that the polygraph proves what Ruta or

Adamczyk themselves actually knew. It cannot establish whether either man independently discovered something without Mr. Winiewski knowing that he had discovered it. Nor does the defense ask the Court to treat the examination as dispositive of credibility.

The examination documents another point on the timeline. Months before the guilty plea, before the co-defendants' trial, and before any verdict existed, Mr. Winiewski was already giving the same account concerning the crew's knowledge. The report therefore bears on whether his later testimony represented a newly invented effort to assist his co-defendants. See U.S.S.G. § 6A1.3(a); *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010).

That account continued through his disclosures to the Government and his plea. It continued when, on May 21, 2026, Mr. Winiewski was called as a defense witness, placed under oath, and testified at the trial of Ruta and Adamczyk.

What changed across those proceedings was the setting, not Mr. Winiewski's allocation of responsibility. He did not tell the jury that he was innocent. He did not claim Ruta and Adamczyk recruited him. He did not say the cocaine belonged to them and that he was merely operating the boat. He did not retreat from his own knowing participation. He continued to incriminate himself.

***The Mixed Verdicts do not Establish that Mr. Winiewski Committed Perjury***

The jury ultimately returned different verdicts as to the two co-defendants. As to Wieslaw Ruta, the jury found him not guilty of Count One, the conspiracy charge, and guilty of Count Two, the substantive possession offense. Doc. 161. As to Piotr Adamczyk, the jury found him guilty of both Counts One and Two. Doc. 162.

Those verdicts unquestionably permit the Court to consider whether Mr. Winiewski's testimony was accurate. They do not, however, constitute a special verdict finding that any particular statement by Mr. Winiewski was knowingly false.

The Ruta verdict is particularly important in assessing any attempt to treat the trial as producing a simple binary credibility determination. The jury acquitted Ruta of the very conspiracy charged by the Government while convicting him of possession. The Adamczyk jury reached a different result.

The verdicts do not tell the Court which portions of Mr. Winiewski's testimony the jury accepted, which portions it rejected, whether any disagreement resulted from competing circumstantial evidence, whether the jury reached some unknown compromise unrelated to Mr. Winiewski's testimony, or whether Mr. Winiewski himself knowingly and willfully testified

falsely.

Those are sentencing findings the Court must make independently.

**MEMORANDUM OF LAW**

Slawomir Winiewski comes before the Court having admitted his own serious criminal conduct. He does not ask the Court to minimize the amount of cocaine aboard the *Nicollet*, excuse his decision to participate in its transportation, or transfer responsibility for that decision to anyone else. He pleaded guilty because he was guilty.

The principal sentencing dispute concerns something different. Mr. Winiewski has consistently maintained that the two other men aboard the vessel, Wieslaw Ruta and Piotr Adamczyk, were not told about the cocaine. Because he maintained that position when he pleaded guilty and later repeated it under oath at his co-defendants' trial, the Presentence Investigation Report treats the position as materially false, recommends an obstruction-of-justice enhancement, denies acceptance of responsibility, and jeopardizes safety-valve relief. PSR ¶¶ 26, 29, 32-33.

Those consequences should not follow merely because the Government disagrees with Mr. Winiewski's account or because a jury convicted the two other men of some or all of the offenses with which they were charged. A finding of sentencing perjury requires substantially more than a conclusion that a

witness's testimony was not fully accepted. And safety-valve eligibility requires the Court to determine whether Mr. Winiewski truthfully provided all of the information he actually possessed.

Mr. Winiewski was giving the same account before his guilty plea, before the co-defendants' trial, and before there was any verdict to which he could react. He subjected that account to a polygraph examination in December 2025. He maintained it during his disclosures concerning the offense in April of 2026. He refused simply to adopt a Government factual basis identifying Ruta and Adamczyk as knowing co-conspirators. He maintained his own guilt while testifying at their trial. His position has not been that he was innocent. His position has been that he was guilty and that the crew did not know what he was doing.

***Objection To PSR ¶ 29: The § 3C1.1 Obstruction-Of-Justice Enhancement Should Not Apply***

The defense objects to the PSR's application of a two-level enhancement under U.S.S.G. § 3C1.1 based upon Mr. Winiewski's testimony at the trial of Ruta and Adamczyk.

The Government bears the burden of proving the facts necessary to support a sentencing enhancement by a preponderance of the evidence. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999); *United States v.*

*Lawrence*, 47 F.3d 1559, 1566–67 (11th Cir. 1995). The sentencing court must ensure that the evidentiary basis supporting an enhancement is both sufficient and reliable. *Askew*, 193 F.3d at 1183.

Where the alleged obstruction is perjury, the required finding is more specific than a determination that testimony was inaccurate or that a factfinder ultimately rejected it.

Perjury for purposes of § 3C1.1 means false testimony concerning a material matter given with the willful intent to provide false testimony, rather than testimony resulting from confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94–95 (1993). The Supreme Court emphasized that "not every accused who testifies at trial and is convicted" thereby commits sentencing perjury. *Id.* at 95.

The Eleventh Circuit applies that requirement directly. When an obstruction enhancement rests upon alleged perjury, the district court must independently review the evidence and make findings sufficient to establish the elements of perjury and willful obstruction. *United States v. Stahlman*, 934 F.3d 1199, 1227–28 (11th Cir. 2019). Separate and clear findings as to the components of the alleged perjury are preferred. *Id.*

The present record does not support an inference of willful falsity merely from the co-defendants' verdicts.

Mr. Winiewski gave the disputed account before trial. Exhibit C documents that he maintained the same position in December 2025. He continued to admit his own culpability when he pleaded guilty. And at the co-defendants' trial, he did not attempt to exonerate himself by transferring responsibility to Ruta or Adamczyk. To the contrary, the substance of his account placed responsibility for the drug venture on himself.

None of those circumstances conclusively establishes that every detail he provided was correct. They are, however, directly relevant to whether any inaccurate testimony was a willful falsehood designed to obstruct justice, which is the question § 3C1.1 requires the Court to decide.

The verdicts themselves are insufficient to bridge that gap. Ruta was acquitted of conspiracy while convicted of possession; Adamczyk was convicted of both counts. Docs. 161–162. Those general verdicts establish the legal guilt or innocence of each defendant on each count. They do not establish whether any particular proposition in Mr. Winiewski's testimony was false, much less which of Mr. Winiewski testimony the jury accepted or rejected.

Accordingly, the defense respectfully requests that the Court sustain the objection to PSR ¶¶ 29 and decline to apply the two-level enhancement under § 3C1.1.

***Objection to PSR ¶ 32: Mr. Winiewski Should Receive Acceptance of***

***Responsibility Under § 3E1.1***

The defense further objects to the PSR's denial of an adjustment for acceptance of responsibility.

Section 3E1.1(a) provides a two-level reduction when the defendant clearly demonstrates acceptance of responsibility for his offense. A guilty plea accompanied by truthful admission of the offense conduct constitutes significant evidence of acceptance. *United States v. Wade*, 458 F.3d 1273, 1279 (11th Cir. 2006). Although later conduct inconsistent with acceptance may outweigh that evidence, *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017), the Guideline expressly cautions that an unsuccessful challenge to relevant conduct does not necessarily establish either a false denial or a frivolous contest. U.S.S.G. § 3E1.1 cmt. n.1(A).

Here, Mr. Winiewski has accepted responsibility for his offense. He has admitted knowing participation in the transportation of a very large quantity of cocaine. He entered a guilty plea. He has not attempted to withdraw that plea. He has not asserted his innocence. He has not denied knowing that cocaine was aboard the vessel. And he has not attempted to transfer his own culpability to Ruta or Adamczyk.

The disputed question concerns what he knew about their knowledge. The distinction separates this case from the recent published Eleventh Circuit

decision in *United States v. Mullings*, 166 F.4th 939, 955 (11th Cir. 2026). There, after initially pleading guilty, the defendant later testified under oath that he was innocent and affirmatively minimized his own role and knowledge. The Eleventh Circuit held that such conduct could outweigh his earlier acceptance.

Mr. Winiewski did the opposite. His disputed account did not diminish his own culpability. It increased it. He continued to say that he was knowingly involved while maintaining that the other men were not told.

If the Court sustains the objection to § 3C1.1, the basis for denying ordinary acceptance of responsibility should likewise fall away.

Even if the Court determines that § 3C1.1 applies, Application Note 4 to § 3E1.1 recognizes that an "extraordinary case" may warrant both an obstruction enhancement and an acceptance reduction. This record presents a substantially stronger basis for such treatment than the ordinary obstruction case because the alleged obstructive conduct was not an attempt by Mr. Winiewski to deny or minimize his own offense. Throughout the relevant period, he continued to accept the core criminal conduct for which he stands before the Court.

The defense therefore respectfully requests that the Court sustain the objection to PSR ¶ 29 and award the two-level reduction under § 3E1.1(a),

together with any additional reduction under § 3E1.1(b) for which the Government makes the required motion.

***Objection to PSR Addendum ¶ 4: Mr. Winiewski Satisfies the Safety-Valve Disclosure Requirement***

The defense also objects to the PSR's conclusion that Mr. Winiewski fails to satisfy the safety-valve requirements of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. See PSR Addendum ¶ 4.

Section 3553(f) expressly applies to qualifying maritime drug offenses under 46 U.S.C. §§ 70503 and 70506. The fifth criterion requires that, no later than the sentencing hearing, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses" within the same course of conduct or common scheme or plan. 18 U.S.C. § 3553(f)(5).

The defense recognizes that Mr. Winiewski bears the burden of establishing compliance with the safety valve. *United States v. Espinosa*, 172 F.3d 795, 796-97 (11th Cir. 1999). But the ultimate truthfulness determination belongs to the Court, not the Government. *Id.* The Eleventh Circuit reversed in *Espinosa* precisely because the sentencing court deferred to the prosecution instead of independently determining whether the defendant had truthfully provided the information he possessed.

The defense's position is that he has consistently disclosed the same core information: he knowingly participated in the cocaine venture; he knew the nature of the cargo; he accepted responsibility for his own conduct; and he did not inform Ruta and Adamczyk that the vessel was transporting illegal drugs.

The Government is free to contend that Ruta, Adamczyk, or both nevertheless knew of the cocaine. The jury's verdicts provide evidence relevant to that issue.

But § 3553(f)(5) asks what information and evidence the defendant has. A finding that another person knew something does not necessarily establish that Mr. Winiewski knew that person's state of mind, that he supplied that knowledge, or that he possessed additional undisclosed information about it.

The distinction is illustrated by Exhibit C. The polygraph does not establish the co-defendants' actual mental states, and the defense does not offer it for that proposition. It bears instead upon whether Mr. Winiewski was being deceptive when he reported that he had not informed the crew and that, to his knowledge, the crew had not been informed. Ex. C. Considered together with the chronology of his disclosures, plea, and trial testimony, it supports the defense's position that he has not withheld a different account from the Government.

Most importantly, § 3553(f)(5) does not require a defendant to agree with

the Government's interpretation of the evidence. It requires him to truthfully disclose all information that he actually possesses. The Court must decide whether Mr. Winiewski has done that.

The defense respectfully submits that he has and requests that the Court sustain the objection to PSR Addendum ¶ 4, find Mr. Winiewski eligible for relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, apply the corresponding two-level reduction under U.S.S.G. § 2D1.1(b)(18), and sentence him without regard to the otherwise applicable statutory mandatory minimum.

***The § 3553(A) Factors Independently Support a Sentence Below the Advisory Guideline Range***

The ultimate command of 18 U.S.C. § 3553(a) is that the Court impose a sentence sufficient, but not greater than necessary, to accomplish the legitimate purposes of federal sentencing. The question is how much punishment is necessary for this defendant.

His history is not one of uninterrupted stability. It includes addiction, criminal conduct, and serious mistakes. But it also includes demonstrated recovery, education, skilled work, a maritime life developed long before the instant offense, and a meaningful relationship with a daughter who remembers not this prosecution but sailing on the Baltic Sea with her father and learning from him to be curious about the larger world. Exs. A & B.

The Court may also consider the manner in which Mr. Winiewski has addressed this case.

He could have attempted to minimize his culpability by blaming the other men aboard the vessel. He did not.

He could have claimed that he did not know what was inside the concealed compartment. He did not.

He could have asserted that somebody else recruited him or took advantage of him. He did not.

His disputed position has consistently made his own conduct look worse, not better: that he knowingly undertook the cocaine venture while the people sailing with him had not been told.

The Court need not accept every aspect of that account to recognize its significance under § 3553(a). Even if the Court resolves one or more of the Guideline disputes against him, the difference between denying one's own guilt and accepting one's guilt while disputing another person's knowledge remains pertinent to the appropriate sentence.

A sentence of 108 months would not trivialize this offense. Mr. Winiewski has already lost his liberty and faces the consequences of an extraordinarily serious federal conviction. The question is whether additional incarceration at the advisory Guideline level is necessary to accomplish

deterrence, just punishment, protection of the public, and respect for the law.

His life provides reason to conclude that punishment need not erase the possibility of another reconstruction.

There was a period in Mr. Winiewski's life when heroin addiction, failed education, and criminal conduct could easily have defined everything that followed. They did not. He returned to school. He completed a university education. He worked. He built a relationship with his daughter. He developed legitimate skills and a life connected to the sea.

The Court cannot undo what happened aboard the *Nicollet*. It can, however, impose a sentence that recognizes both the seriousness of that choice and the person who made it.

## CONCLUSION

For the foregoing reasons, Mr. Winiewski respectfully requests that the Court sustain his objection to the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1, award the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, find that he satisfies the safety-valve requirements of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, apply the corresponding reduction under U.S.S.G. § 2D1.1(b)(18), and impose a sentence of 108 months imprisonment, which would be sufficient, but not greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553(a).

DATED this 21st day September 2026.

Respectfully submitted,

CHARLES PRITCHARD, JR.
FEDERAL DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire
Assistant Federal Public Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of September 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Joseph Ruddy, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire,
Assistant Federal Public Defender